UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PAMELA A. BECK                                                                    Plaintiff

v.                                                              Civil Action No. 3:25-CV-631-RGJ

CITY OF LOUISVILLE, ET.AL.                                                       Defendants

* * * * *

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on numerous motions and "judicial notices" filed by pro se

Plaintiff, Pamela A. Beck ("Beck") against Defendants Louisville/Jefferson County Metro

Government ("Metro")[1] and Rhonda Drury ("Drury").

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 29, 2025, Beck filed a Complaint against Metro and "Jane Doe, Code

Enforcement Officer, sued in individual and official capacity." [DE 1 at 1]. In the introduction,

Beck states that she "brings this civil rights action against Defendants for First Amendment

---

[1] Beck's Complaint and all subsequent documents name "City of Louisville, Kentucky" as the Defendant. In Defendant's notice of appearance and response to show cause, counsel indicates that the proper named defendant is "Louisville/Jefferson County Metro Government (incorrectly named as "City of Louisville, Kentucky" in Plaintiff's Complaint)." [DE 81 at 396; DE 82 at 404]. In 2003, the City of Louisville government merged with the surrounding Jefferson County government and formed what is now referred to as the Louisville/Jefferson County Metro Government (Louisville Metro Government). *See* http://www.louisvilleky.gov. Therefore, the separate governmental entity of the City of Louisville no longer exists. *Sharber v. City of Louisville*, No. 3:16-CV-P526-DJH, 2017 WL 2221711, at *4 (W.D. Ky. May 19, 2017). As a result, the Court construes the claims against the City of Louisville as being brought against the merged Louisville Metro Government. *Sharber*, 2017 WL 2221711, at *4. *See also, Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 14 (Ky. App. 2009) (indicating that "Louisville/Jefferson Metro Government is the post-merger successor to the City of Louisville"); *St. Matthews Fire Prot. Dist. v. Aubrey*, 304 S.W.3d 56, 60 (Ky. App. 2009) (stating that "Jefferson County and the City of Louisville have merged to form the Louisville Metro Government"). In the numerous pleadings filed by Plaintiff after Metro's representation, Plaintiff has not objected to Metro's assertion that it is the proper party. Such correction has been made by the Court in numerous cases and the Court will order the Clerk to change the docket to reflect Metro's proper name for Defendant "City of Louisville, Kentucky." *Sharber*, 2017 WL 2221711, at *4.

retaliation in violation of 42 U.S.C. § 1983." [*Id.*]. Beck asserts that she "engaged in constitutionally protected activity by: (a) reporting ongoing safety violations and property rights infringements involving commercial semi-trailers blocking her fence; and (b) displaying lawful signage on her property expressing her grievances and documenting her legal proceedings," and that "[i]n response to Plaintiff's protected speech and petitioning activity, Defendants engaged in a pattern of retaliatory and selective enforcement actions, including intimidating home visits, refusal to address legitimate complaints, and targeting Plaintiff with minor code enforcement actions while ignoring the serious violations she reported." [*Id.*]. Beck claims that these "retaliatory actions have chilled Plaintiff's exercise of First Amendment rights and caused ongoing irreparable harm." [*Id.*]. She asserts Count I - First Amendment Retaliation (42 U.S.C. § 1983) against all defendants and Count II – Municipal Liability (42 U.S.C. § 1983) against Metro. [DE 1 at 4-6]. On the same day, Beck also moved for leave to proceed in forma pauperis [DE 3] and "pursuant to Federal Rule of Civil Procedure 65 for entry of a Temporary Restraining Order (TRO) and Preliminary Injunction to immediately enjoin Defendants from continuing their pattern of retaliatory conduct in violation of Plaintiff's First Amendment rights." [DE 4 at 16].

The next day September 30, 2025, Plaintiff filed a request for the Court to "immediately perform the mandatory ministerial duties triggered by" her complaint and motions, specifically: (1) an in forma pauperis ("IFP") screening pursuant to 28 U.S.C. § 1915(e)(2); (2) consideration of her TRO motion including holding a "same-day or next-day hearing[];" and (3) service of her filings pursuant to 28 U.S.C. § 1915(d). [DE 6 at 28]. In addition, the request threatened to file a petition for writ of mandamus to compel performance of these statutory obligations. [DE 6 at 29].

One day later, on October 1, 2025, the Court issued a standard deficiency notice indicting that Plaintiff had failed to tender summons with her complaint and provided instructions to do so.

[DE 7]. The next day, October 2, 2025, after review of Beck's filings, the Court granted her IFP request [DE 3] and denied her motion for immediate performance of the Court's mandatory ministerial duties [DN 6] as moot. [DE 8]. The October 2, 2025 Order stated:

> The Court is aware of its statutory duties under 28 U.S.C. § 1915(e), and Plaintiff's motion is unusual, at best, and inappropriate, at worst. In filing this motion requesting immediate action on the IFP motion and initial review, Plaintiff fails to consider the numerous cases filed in this district daily and the time devoted by staff to those cases. Plaintiff and anyone who is assisting her are cautioned that filing frivolous motions and notices, like this one, strains the Court's resources and prevents the Court from conducting the initial review and from reviewing any other important motions filed in the case.

[DE 8 at 37].

On October 6, 2025, just six days after the filing of her initial complaint, the Court issued a memorandum opinion and order on initial review of the complaint [DN 1] pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) and on her motion for a temporary restraining order. [DE 9]. The Court permitted the action to proceed but required Beck "to move to amend her complaint to name Jane Doe Defendant or show good cause for her failure to do so." [DE 9 at 45]. The Court also denied the TRO for failure to comply with the requirements of Rule 65. [*Id.* at 43-44]. Specifically, the Court noted that

> Plaintiff fails to certify any efforts made to give notice to the City of Louisville prior to filing the current complaint and the motion for temporary restraining order and fails to articulate a sufficient reason why such notice should not be required. [DN 4]. Instead, Plaintiff argues that 'the escalating nature of the retaliation and the September 29 incident' justify the Court's consideration of immediate relief before Defendants' respond. [*Id.*]. The Court disagrees. A review of Kentucky state court records reflects that Plaintiff filed suit against her commercial neighbor(s) and others on June 27, 2025, in Jefferson Circuit Court, reflecting that this dispute between Plaintiff and her neighbor(s) started, at the latest, in June 2025. *See Beck v. Central Commerce Park, LLC*, Civil Case No. 25-CI-5162. In this current federal civil action, while Plaintiff characterizes the alleged retaliation as escalating, Plaintiff's motion for temporary restraining order does not reflect that characterization—the code enforcement officer did not enter Plaintiff's property or

issue her a citation for unfinished house repairs—and does not justify issuing a restraining order without notice.

[DE 9 at 44].  Further, the Court declined to rule on the Motion for Preliminary Injunction because Defendants had not had an opportunity to respond.  [*Id.*].  The Court directed that the Clerk of Court to "issue summonses on Defendants once they are tendered by Plaintiff," and then directed United States Marshals Service ("USMS") to serve a copy of the complaint, summonses, and the October 6, 2025 Order on Defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure. [*Id.* at 44-45]. In addition, the Court ordered the clerk to mail a copy of these documents to the Jefferson County Attorney.  And finally, the matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) "for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues."  [*Id.* at 46].  As initial review was complete, the case was reassigned to the undersigned. [DE 11].

The same day as issuance of the October 6, 2025 Initial Review Order, Beck filed her first of many "supplements" to her complaint.  [DE 12]. And on October 8, 2025, the district court received a "Petition for Writ of Mandamus"[2] from Plaintiff and emailed same to the Sixth Circuit Court of Appeals, which opened case No. 25-5913 the next day. [DE 13].  Despite the Court's issuance of its October 6, 2025 Initial Review Order [DE 9], the Petition asserted that "Mandamus is proper because the district court failed to screen the complaint, failed to act on the IFP motion, and has ignored the TRO/PI motion, all of which are ministerial duties under §1915(e)(2)(B)." [DE 13 at 53].  The Writ and IFP request were eventually denied and the action dismissed by the Sixth Circuit.  [DE 89; DE 90].

---

[2] The Writ indicates that it is filed by "Petitioner, Pamela A. Beck, pro se, by and through her Pro Se Legal Assistant, Anthony Lovell Smith (PSLA)."  [DE 13 at 53]. The document is only signed by Beck. [*Id.* at 56].

A few days later, on October 12, 2025, Beck filed an Amended Complaint that requested to identify Jane Doe as Rhonda Drury.[3]  [DE 14 at 64-65]. The Amended Complaint incorporated the original complaint but does not add any new claims. [DE 14 at 64].  Between October 14 and 20, Beck files several notices and supplements.  [DE 15; DE 16; DE 17; DE 18; DE 19]. On October 20, 2025, in addition to calling the District Clerk's Office to inquire about service of the summons, Beck filed a "supplemental Notice to apprise the Court of a continuing procedural irregularity and potential conflict of interest affecting this and related actions," in which she requested review of the case by the Chief Judge and reassignment of the case to a different judge. [DE 20 at 107].  In the regular course, summons was issued to Rhonda Drury and forwarded to the USMS and mailed to the Jefferson County Attorney. [DE 21].

On October 24, 2025, Beck filed a "Supplemental Notice Regarding Judicial Actions" asserting complaints and issues regarding Senior District Judge Joseph H. McKinley, Jr., even though he was no longer assigned to the case.  [DE 22 at 114].

On the same day, Beck filed one of many "Supplemental Notices under Fed. R. Civ. P. 15(d)."  The document purports to incorporate "Original Complaint (DN 1) Amended Complaint / Exhibits Supplemental filings dated October 14 and 16, 2025."  This document appears to discuss other federal actions and a new case filed by Beck relating to the same underlying alleged conduct.

> This supplement preserves the continuum of facts across related federal actions (Nos. 521, 603, 631, and the new Monell filing) without asserting new claims in Case 631. Plaintiff notes that Senior District Judge Joseph H. McKinley, Jr. was previously assigned to related matters (Nos. 645, 667, 679, and 691) and failed to perform mandatory screenings under 28 U.S.C. § 1915(e)(2)(B), contributing to the ongoing procedural context. The factual overlap between these cases demonstrates a consistent pattern of obstruction, selective enforcement, and retaliation relevant to Case 631 and the new 1983 / Monell action.

___

[3] Like the Writ, the Amended Complaint states that it is filed by "Plaintiff, Pamela A. Beck, proceeding pro se, with pro se legal assistance." [DE 14 at 64].  This document is signed by Beck as well as "Anthony Lovell Smith, Pro Se Legal Assistant Re-Entry Bridges, Inc." [*Id.* at 68].

[DE 23 at 118]. Beck specifically states that "No new claims or relief are asserted beyond those previously pled in Case 631" [*Id.* at 119]. Beck appears to file numerous of these notices and supplements related to other cases. [DE 24; DE 25; DE 26; DE 29].

To streamline Beck's claims and prevent the numerous overlapping filings being made by Beck on a nearly daily basis, this Court issued an order of consolidation for the pending cases and administrative dismissal. [DE 27]. The Court stated

> In the second-filed action, Case No. 3:25-cv-694-RGJ, Plaintiff filed a notice of related proceedings (DN 6) in which she states that the case is directly related to Case No. 3:25-cv-631-RGJ because it pertains to the same 'code enforcement officers' (defendants) and the same constitutional violations set forth in that case.
>
> Upon review, the Court concludes that the two actions should be consolidated. *See* Fed. R. Civ. P. 42(a)(2) ('If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions[.]').

[DE 27 at 135]. The Court ordered this case become the lead case and all filings be made in this action. [*Id.* at 136]. The motion for leave to file amended complaint at DE 28, represents the consolidation of the issues in both actions. Specifically, DE 28 seeks to add two parties, Code Enforcement Officers Chad Hess and Cindy Calvelo, in their individual and official capacities, and adds claims of retaliation against the three individual officers, and a Monell Claim against Metro. [DE 28 at 138-39].

In the month of November, 2025, Beck filed a motion for partial summary judgment [DE 30], a supplemental motion one day later to add numerous corporate parties and RICO claims [DE 31; DE 46 (corrected notice to add the corporate parties)]; numerous supplemental notices providing a near daily accounting of actions related to the case [DE 32; DE 33; DE 40; DE 43; DE 44]; notices and requests for information regarding service of process [DE 34; DE 36; DE 37; DE 39]; a motion to file a second amended complaint to add additional requests for relief [DE 35]; a notice of administrative complaint against the USMS regarding the failure to serve summons for

the two code enforcement officers that she requested to add in DE 28, but which had not been granted [DE 38]; requests for default judgment against Metro and Drury [DE 41; DE 42]; a notice of submission of third amended complaint adding the fifteen corporate defendants and new claims including "PPP loan fraud and asset shielding via Astrella Fund" and "[o]ngoing obstruction of state default judgment" as well as RICO claims, fraudulent transfer and millions of dollars in alleged damages [DE 47 at 258; DE 49 (supplement to third amended complaint); DE 52 (corporate summons tendered)]; and a new motion for TRO and preliminary injunction [DE 51; DE 53 (supplement to DE 51); DE 54 (supplement to DE 51)].

Amid these frenzied filings, on November 23, 2025, Beck finally submitted a summons for Metro as requested by the Court on October 1, 2025. [DE 45; DE 48; *see also* DE 7]. Service was returned executed by the USMS, three days later, on November 26, 2025. [DE 50]. Unfortunately, Beck identified the wrong address on the summons for the Jefferson County Attorney's Office. While Metro was identified to be served through the Jefferson County Attorney's Office at 600 W. Jefferson Street, Suite 2086, the return of service indicates that the USMS did make service to the proper address at 500 W. Jefferson Street to Natalie House. [DE 50 at 267-69].

In the month of December, Beck continued filing nearly daily. She filed an "Omnibus Motion for Immediate Relief, incorporating by reference all prior filings, including her Motion for Partial Summary Judgment on Liability (Nov. 4, 2025), and supplements filed Nov. 25, 29, and 30, 2025, to consolidate the full factual, procedural, and legal record supporting immediate injunctive and declaratory relief." [DE 55 at 304]. The document specifically states that this motion, filed pursuant to Fed. R. Civ. P. 15(d) "is non-claim-adding, record-preserving, and factual-contextualizing" and that her approach in filing this document is "grounded in Haines v. Kerner, 404 U.S. 519 (1972), recognizing liberal construction of pro se pleadings, and in Smith v.

7

Peters, 631 F.3d 418 (7th Cir. 2011), reinforcing procedural integrity principles." [DE 55 at 304-05]. In addition, she filed numerous supplemental notices providing a near daily accounting of actions related to the case [DE 56; DE 65]; numerous motions for default judgment in the amount of $102 million, as well as collection and writ of execution on her default judgments, including requests for the clerk's office to complete its ministerial duties regarding these default requests [DE 57; DE 58; DE 59 (motion for default which includes another request for permanent injunction); DE 60 (motion for collection and writ of execution); DE 61 (first motion requesting clerk's office to complete ministerial duties); DE 62 (second motion requesting clerk's office to complete ministerial duties); DE 63 (third motion requesting clerk's office to complete ministerial duties); DE 64 (fourth motion requesting clerk's office to complete ministerial duties); DE 68 (motion for default which includes another request for permanent injunction); DE 69 (motion for enforcement of default judgment and permanent injunction); DE 70 (notice of ripeness); DE 71 (supplement to notice of ripeness); and numerous "judicial notices" of final procedural exhaustion or inaction on ministerial duties [DE 72; DE 73; DE 74].

> On January 8, 2025, the Magistrate Judge issued a show cause order stating that
>
> Defendant City of Louisville had until December 17, 2025 to file an answer or responsive pleading. Over three weeks have passed since that deadline with Defendant City of Louisville failing to have counsel enter an appearance or file any responsive pleading to Plaintiff's Complaint.
>
> ***
>
> Defendant City of Louisville shall have fourteen (14) days from date of entry of this Order to SHOW CAUSE in writing for its failure to file a timely answer after being served. Defendant City of Louisville shall indicate in their written filing whether the same counsel intends to represent the individually named Defendants in this matter.

[DE 75 at 380-81].

And yet, three days later, Beck continued filing judicial notices of "Final Procedural Exhaustion and Completion of Mandatory Ministerial Process" and other motions requesting default. [DE 76; DE 77; DE 78; DE 79].

On January 22, 2025, in accordance with the show cause deadline set by the Court, Metro filed a sealed[4] response and notice of appearance. [DE 80; DE 81; DE 82; DE 84]. The response stated:

> [Counsel] was assigned to defend Metro as well as any individual Defendants employed by Metro on or about November 1, 2025. See Exhibit 1, Affidavit of [Counsel]. The undersigned contacted the employees named in Plaintiff's Complaint (Rhonda Drury, Cindy Calvelo, and Chad Hess) and asked them to notify him if they were served. *Id.*
>
> Pleadings filed by the Plaintiff the week of November 10-14, 2025, indicated that service had been, or should have been, effected on at least one of the individual Defendants to whose defense the undersigned had been assigned — Rhonda Drury. (See DN 034, DN 036, DN 037 and 038). On Thursday, November 13, 2025, undersigned called the U.S. District Court for the Western District of Kentucky Clerk's office and was informed that no service had been made on any Defendant as yet named by the Plaintiff. *Id.*

[DE 81 at 396]. Counsel then discussed personal matters which necessitated his time away from the office and caused the missed response date for Metro. [*Id.* at 397]. The response additionally discusses the "procedural quagmire created by Plaintiff's numerous filings" which made it "difficult to ascertain from the record what is the operative pleading to which Metro must respond." [*Id.*]. Metro then requested:

> the Court deny the default judgment against it requested by Plaintiff, clarify to Metro what the operative pleading is to which Metro must respond and allow seven (7) days from that clarification to file its response, and also clarify whether any individually named defendants that are employees of Metro, Drury, Calvelo, and Hess, have been successfully served.

---

[4] The document was requested to be sealed because it contained personal information regarding one of the counsel involved in the case. [DE 80]. The Court will seal the document but will quote from non-sensitive portions for completeness of this record.

[*Id.* at 398].

Undeterred by this timely response, Beck continued her prolific filings, including filing judicial notices of "Final Procedural Exhaustion and Completion of Mandatory Ministerial Process" and other motions requesting default [DE 85; DE 86; DE 87; DE 88; DE 91; DE 92; DE 93; DE 96; DE 99] as well as other judicial notices regarding related proceedings and what Beck perceives as "the institutional nexus between the federal prosecution of Brett Hankison, the consent decree framework governing Louisville Metro Government's constitutional conduct, the judicial appointments of the presiding judges in related proceedings, and the present proceeding." [DE 94; DE 95; DE 97; DE 98].

All motions are now before the Court.

## DISCUSSION

Metro has accurately described the posture of the case in its response to show cause. Plaintiff's prolific and near daily filings have created a "procedural quagmire" which has made this case difficult to decipher for the Court, counsel, and the USMS. [DE 81 at 397]. Plaintiff's use of Fed. R. Civ. P. 15(d) to repeatedly "supplement" her claims and her numerous filings of "amended" complaints without seeking leave to do so has made it nearly impossible to discern the operative pleading for which Metro need respond. Moreover, Beck's initial failure to tender summons [DE 7] caused delay in service of Metro and then personal issues experienced by counsel [DE 81] caused additional delay in getting Metro properly served and appearing of record. And finally, the numerous amendments and additions of parties without first requesting leave have made it confusing regarding who should be served by the USMS. The Court now attempts to disentangle this "procedural quagmire" and move the case forward toward resolution.

10

## A. Default Judgments and Metro's Appearance.

Rule 55 governs Plaintiff's motion for default judgment "[w]hen a party against whom a judgment of affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise ..." Fed. R. Civ. Pro. 55(a). Where, as here, a case does not involve a sum certain, Rule 55 sets out a two-step process. First, the Clerk of Court must issue an entry of default under Rule 55(a).

Second, upon entry of default, a plaintiff "must apply to the court for a default judgment" by filing a motion for a default judgment under Rule 55(b)(2). Fed. R. Civ. P. 55(b)(1)-(2); *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020). The granting of a motion for default judgment under Rule 55(b)(2) is "left within the sound discretion of the court"; however, there are procedural and substantive requirements which must be met. *HICA Educ. Loan Corp. v. Klugewicz,* No. 1:11-CV-287, 2012 WL 6799752, at *1 (E.D. Tenn. Apr. 17, 2012), report and recommendation adopted, No. 1:11-CV-287, 2013 WL 68533 (E.D. Tenn. Jan. 4, 2013) (quoting *Irby v. Fashion Bug* (*In re Irby*), 337 B.R. 293, 294 (Bankr. N.D. Ohio 2005) (applying Fed. R. Bankr. P. 7055, which incorporates Fed. R. Civ. P. 55)).

Procedurally, a plaintiff must show (1) the defendant was properly served with process; (2) the procedural obligations for default judgment under Federal Rule of Civil Procedure 55 have been fulfilled; (3) the defendant was served with notice at least seven days before the hearing on the motion for default judgment, if the plaintiff is seeking default against a defendant who has entered an appearance; (4) the defendant is not an infant or incompetent person; and (5) the defendant is not a member of the armed services who is entitled to protection under the Servicemembers Civil Relief Act. *Id.* at *3-4 (citations omitted). Only if the plaintiff fulfills all

11

these requirements does the court have discretion to enter a default judgment. *Broadcast Music, Inc. v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *4 (E.D. Tenn. Nov. 12, 2009) (citing *Virgin Records Am., Inc. v. Bagan*, No. 08-4694, 2009 WL 2170153, at *2 (D.N.J. July 21, 2009)).

The Court then considers whether a default judgment is substantively proper. *Methe v. Amazon.com.dedc, LLC*, 2019 WL 3082329, at *2 (S.D. Ohio July 15, 2019). When doing so, the Court takes all factual allegations in the complaint as true. *In re Family Resorts of Am., Inc.*, 1992 WL 174539, at *4 (6th Cir. July 24, 1992). An entry of default, however, does not automatically entitle the plaintiff to a default judgment. *See F.C. Franchising Sys., Inc. v. Schweizer*, 2012 WL 1945068, at *3 (S.D. Ohio May 30, 2012). The plaintiff must still show that, when all factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted. *Said v. SBS Elecs., Inc.*, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (It "remains the plaintiff's burden to demonstrate that" the complaint's factual allegations, taken as true, "establish the defendant's liability."), *adopted as modified*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010).

When considering whether default judgment is substantively proper, courts:

> [T]ake into account: (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002).

Here, there are numerous motions for default against not only Metro, but also the other defendants "added" in her "amended complaints" which the Court has not granted leave to add and who have, as a result, never been served. Her last of many motions for default requests default against "City of Louisville, Kentucky, Truist Financial, The Carlyle Group, Zippy Shell, Inc., Zippy Shell of Greater Louisville, Code Enforcement Officer Chad Hess, Code Enforcement Officer Rhonda Drury, Code Enforcement Supervisor Cindy Calvelo, Donald 'Chip' Ridge, Jason

A. Kron, Tim Ratliff, Schuyler John, Kevin Hurst, J.R.R. Investments, LLC, Howard Ball Moving & Storage, LLC; Central Commerce Park, LLC, Kron Ridge Investments, LLC, Kentucky Bourbon Barrel, LLC, Astrella Fund, LLC, John Does 1–10 (preserved for substitution purposes only)." [DE 99 at 464-65].

First, there can be no default judgment against a party where they have not yet been added to the complaint or served. Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Plaintiff bears the burden of proving that service was proper. *Breezley v. Hamilton Cty.*, 674 F. App'x 502, 505 (6th Cir. 2017) (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)). Here, Plaintiff cannot show service to the unadded parties and thus default is clearly inappropriate. This applies to Truist Financial, The Carlyle Group, Zippy Shell, Inc., Zippy Shell of Greater Louisville, Code Enforcement Officer Chad Hess, Code Enforcement Supervisor Cindy Calvelo, Donald "Chip" Ridge, Jason A. Kron, Tim Ratliff, Schuyler John, Kevin Hurst, J.R.R. Investments, LLC, Howard Ball Moving & Storage, LLC, Central Commerce Park, LLC, Kron Ridge Investments, LLC, Kentucky Bourbon Barrel, LLC, Astrella Fund, LLC, and John Does 1–10.

As to Rhonda Drury, while summons appears issued to Drury at Metro Development Center, 444 S. 5th Street, Suite 200 [DE 21], there is no proof of service in the record. It is Plaintiff's burden to show she has been served and there is no return of service on the record. As such, default would be inappropriate. Yet, it does appear that the Jefferson County Attorney's Office, through receipt of service on Metro, has entered their appearance on behalf of both Metro and Drury. [DE 81 at 398; DE 82 at 404 ("The undersigned counsel hereby respectfully notifies

13

the Court and the Parties of his entry of appearance as co-counsel on behalf of Defendants Louisville/Jefferson County Metro Government (incorrectly named as 'City of Louisville, Kentucky' in Plaintiff's Complaint) and Rhonda Drury")].

As to Metro, service has been made [DE 50] and the Court must now analyze the *Russell* factors to determine if default judgment is appropriate. First, as to possible prejudice to Plaintiff, she alleges that her property rights have been violated and that there is ongoing "property interference" based on "[t]he corporate sign staked inches from Plaintiff's fence" [DE 99 at 464]. She further asserts that "reckless exposure to that harm without remedy is itself a compensable violation." [*Id.*]. Yet, this case has only been pending since September 29, 2025 [DE 1] and due to Plaintiff's own failure to tender summons [DE 7], no summons was issued until November 23, 2025 [DE 45]. Metro's response was due December 17, 2025 [DE 50], show cause was issued within three weeks thereafter [DE 75], and Metro timely responded to the show cause [DE 81]. This minimal delay of four or five weeks (at most with several holidays in the interim) is not prejudicial given the complaints at issue. Second, the merits of the claims are unclear based on the numerous filings. Third, as to the sufficiency of the complaint, it is difficult to discern the operative pleading, and Metro has understandably noted its confusion regarding the operative document and the claims to which Metro must respond. [DE 81 at 397]. Fourth, as to the amount of money at stake, it appears, at a minimum, "Plaintiff seeks $150,000 each in compensatory and punitive damages from Hess, Calvelo, and Drury individually" and "Plaintiff seeks $1,500,000 in compensatory damages from the City under Monell." [DE 28 at 139]. In later filings this amount reaches $102 million. So regardless, substantial sums are alleged to be at issue. Without further information, the Court cannot address the factor of possible disputed material facts.

14

As to the sixth factor, whether the default was due to excusable neglect, pursuant to Rule 6(b)(1)(B), the Court may, "for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B). Whether to grant defendants an enlargement of time to file their answer was a matter committed to the district court's discretion. Fed. R. Civ. P. 6(b)(2); *Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 428 (6th Cir. 2006). Whether neglect is "excusable" is an equitable determination based on consideration of all relevant circumstances. *Morgan*, 165 F. App'x at 428. These include the danger of prejudice to the nonmoving party, the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* Metro has requested additional time to respond [DE 81 at 398 ("Metro, by counsel, respectfully requests the Court deny the default judgment against it requested by Plaintiff, clarify to Metro what the operative pleading is to which Metro must respond and allow seven (7) days from that clarification to file its response")] and adequately set forth the unfortunate personal circumstances that have led to the missed deadline in this case [DE 81 at 397]. There is no indication that Metro was failing to act in good faith and no evidence that the delay will substantially impact the judicial proceedings. As a result, the Court finds the delay here the result of excusable neglect. *Morgan*, 165 F. App'x at 428.

For these reasons, all motions for default, collection on default, or to compel the clerk to grant default under Rule 55(a) are **DENIED** [DE 41; DE 42; DE 57; DE 58; DE 59; DE 60; DE 61; DE 62; DE 63; DE 64; DE 68; DE 69; DE 78; DE 86; DE 88; DE 92; DE 96; DE 99]. In addition, because Metro's response contains sensitive personal information regarding a third party (counsel), there is a sufficiently compelling basis to warrant sealing Metro's response. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 308 (6th Cir. 2016) ("[T]he privacy

interests of innocent third parties should weigh heavily in a court's balancing equation." (internal citation omitted)); *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476–77 (6th Cir. 1983) (finding that third parties' "justifiable expectation of privacy" that their names and financial records would not be publicly revealed as sufficiently compelling to justify nondisclosure of such records). The Court finds that the interests of public access to the documents do not outweigh the interests favoring nondisclosure of this sensitive information. As a result, Metro's Motion for leave to seal [DE 80] will be **GRANTED.**

### B. Operative Complaint and Motions to Amend/Supplement.

Now having granted Metro and Drury the opportunity to respond, the Court must determine the operative document requiring response. To do so, the Court addresses the multiple motions to amend the complaint as well as the numerous supplements made pursuant to Rule 15(d).

The Sixth Circuit has explained the operation of Federal Rule of Civil Procedure 15(a), the Rule governing the amendment of complaints, as follows:

> Federal Rule of Civil Procedure 15(a)(1) authorizes a plaintiff to amend the complaint once as a matter of course within twenty-one days of service of the complaint, a responsive pleading, or a motion to dismiss. After that twenty-one-day window has expired, a plaintiff may amend the complaint only with the court's leave or the defendants' written consent. Fed. R. Civ. P. 15(a)(2) instructs the courts to 'freely give leave when justice so requires' and 'set[s] forth a 'liberal policy of permitting amendments to ensure the determination of claims on their merits.' *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)). But Rule 15(a) does not give plaintiffs unbridled authority to amend the complaint. A motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile.

*Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 442-43 (6th Cir. 2014).

Rule 15(d) permits supplemental pleadings:

16

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Amended and supplemental pleadings, therefore, differ in [that the] former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading," while "the latter deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1504 (3d ed.). "The purpose of supplemental pleadings under Rule 15(d) is to allow a plaintiff to update [its] complaint to add allegations of later events relating to [its] original complaint." *Sunless, Inc. v. Selby Holdings, LLC*, No. 3:20-CV-00930, 2021 WL 3513871, at *2 (M.D. Tenn. Aug. 10, 2021) (quoting *Cage v. Harry*, No. 09–512, 2010 WL 1254562, at *1 (W.D. Mich. Mar. 26, 2010) (magistrate judge's order)). Additionally, a supplemental complaint cannot be filed as a matter of course, regardless of its timing; "all supplemental pleadings require leave of court under Rule 15(d)." *Sunless, Inc.*, 2021 WL 3513871, at *2 (quoting Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1504 (3d ed.)). As such, an amended complaint, is not the appropriate mechanism to add allegations regarding ***post-filing conduct***. Rather, when a party wishes to plead facts about "any transaction, occurrence, or event that happened after the date of the" initial pleading, that party should rely on a ***supplemental*** pleading pursuant to Rule 15(d), not on an ***amended*** pleading pursuant to Rule 15(a).

On October 6, 2025, in the Court's order on initial review of the complaint [DN 1] pursuant to 28 U.S.C. § 1915(e), the Court permitted the action to proceed but required Beck "to move to amend her complaint to name Jane Doe Defendant or show good cause for her failure to do so." [DE 9 at 45]. Beck then filed an "Amended Complaint" on October 9, 2025, identifying Jane Doe

17

as Rhonda Drury, however, she did not file a motion to seek leave as requested. [DE 14 at 64-65]. The Amended Complaint incorporated the original complaint [DE 1] but does not add any new claims. [DE 14 at 64]. Because the Complaint was filed within 21-days, the Court will excuse the lack of requested motion to amend. Additionally, because this Complaint does not add any new claims and only adds Jone Doe's identity, the Court will incorporate by reference all reasons set for in the Court's initial review [DE 9] and allow the amended complaint to proceed. 28 U.S.C. § 1915(e).

Between the filing of the Amended Complaint [DE 14] and the consolidation of Beck's cases [DE 27] with the Motion for Leave to File Amended Complaint [DE 28], Beck filed several "Supplemental Notices" [DE 15; DE 17; DE 18; DE 22; DE 23] all purporting to add post-complaint allegations under Rule 15(d). None of these Supplements were filed with motions requesting leave to file them as required by Rule 15(d) and none were specifically labeled "supplemental complaints."

For example, the first supplemental notice [DE 15] discusses two additional parties, Officers Hess and Calvelo, for retaliatory enforcement, and references prior cases in this Court in which her claims have been denied and the matters are on appeal to the Sixth Circuit (Case No. 3:25-cv-521 against Officer Hess for civil rights violations under 42 U.S.C. § 1983 and RICO claims which is now pending appeals Case. Nos. 25-5790 and 25-5832 and Case No. 3:25-cv-603 against Officer Calvelo also for civil rights violation and on appeals, Case Nos. 25-5872, 25-5873, and 25-5913). It also discusses "new developments regarding a trailer relocation." [DE 15 at 85]. The second supplemental notice [DE 17] discusses new observations and developments and simply requests "the Court take judicial notice of these events" and incorporate them into the record. [DE 17 at 96-97].

18

As with many of Plaintiff's supplements it is difficult to discern what is intended as new allegations in the current matter and what is simply background of other cases. Because none of these supplements were filed with motions requesting leave to file as required by Rule 15(d) and none were specifically labeled "supplemental complaints," they are procedurally improper and cannot be considered by the Court without a motion for leave to file and an opportunity for Defendants to respond. Rule 15(d) ("***On motion and reasonable notice***, the court ***may***, on just terms, permit a party to serve a supplemental pleading…" (emphasis added)). Moreover, it cannot be considered a "just term" to permit Plaintiff to supplement or amend on a near daily basis, such prolific filings and supplements are what has created the "procedural quagmire" currently before the Court. All such "supplemental notices" to the extent they intend to supplement the pleadings with post-complaint occurrences, they cannot be considered without motions and will not be considered by the Court.

On October 31, 2025, the Court consolidated two of Plaintiff's actions -694 and this action- 631. In the second-filed action, Case No. 3:25-cv-694-RGJ, Plaintiff filed a notice of related proceedings in which she states that the case is directly related to Case No. 3:25-cv-631-RGJ because it pertains to the same "code enforcement officers" (defendants) and the same constitutional violations set forth in that case. It instructed the complaint from Case No. 3:25-cv-694-RGJ be filed in this action as a motion for leave to file an amended complaint. [DE 27 at 136]. This Motion is DE 28 in the action before the Court. It encapsulates the same claims and parties as this Court previously reviewed in its initial review [DE 9] with the addition of Officers Hess and Calvelo. Because this Complaint does not add any new claims against Defendants Metro and Drury, the Court will incorporate by reference all reasons set for in the Court's initial review [DE 9] and allow the amended complaint to proceed against those defendants. 28 U.S.C. § 1915(e).

19

The Court, therefore, **GRANTS in PART** the Motion for Leave to File Amended Complaint [DE 28] as to Defendants Metro and Drury and DE 28 will become the **OPERATIVE PLEADING** for these defendants to answer or otherwise plead.

As to the attempt to add Officers Hess and Calvelo, the Court **DENIES in PART** the motion to amend [DE 28] because amendment is futile as to these defendants for the reasons set forth in Case No. 3:25-cv-521 against Officer Hess and Case No. 3:25-cv-603 against Officer Calvelo. "A proposed amendment is futile if [it] could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quotation and citation omitted). An action may be dismissed under Fed. R. Civ. P. 12(b)(6) if the complaint fails to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

"Pro se pleadings are held to a less stringent standard than formal pleadings drafted by attorneys." *Haines*, 404 U.S. at 519. Yet "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory" and "the less stringent standard for pro se plaintiffs does not compel courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). A pro se complainant must still contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir. 1988). Ultimately, "[t]he Court's duty to construe a pro se complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet for Families & Child.*, No. 3:07-cv-11-S,

21

2007 WL 2462184, at *4 (W.D. Ky, Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

Even taking Plaintiff's allegations in a light most favorable to her and under a more lenient pro se pleading standard, the amendment to add Officers Hess and Calvelo is futile for the reasons set forth in Case No. 3:25-cv-521 against Officer Hess and Case No. 3:25-cv-603 against Officer Calvelo, which is incorporated here. Moreover, these matters are already on appeal in different cases. "It is well settled that filing a notice of appeal with the district court clerk deprives the district court of jurisdiction to act in matters involving the merits of the appeal." *United States v. Holloway*, 740 F.2d 1373 (6th Cir. 1984) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982)). Thus, the Court doubts it would have jurisdiction to consider these claims given they are on appeal in other cases, nor would it further judicial economy to reconsider claims already decided and on appeal.

As to all other motions to amend the Complaint [DE 31; DE 46; DE 47; DE 49], Federal Rule of Civil Procedure 8(a) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Similarly, Rule 8(d)(1) specifies that "[e]ach allegation must be simple, concise, and direct." This rule serves the judicial interest in fair notice. A plaintiff must present the complaint in an intelligible manner so that a court or opposing party can "understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994). A complaint that is "prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Id.* at 775-76. Upon review of the motions to amend and numerous supplemental notices, the Court finds that Plaintiff has not met the standard of pleading under Rule 8. Plaintiff's allegations are now spread among countless

filings which are seemingly added to every day.  Further, the filings are verbose and do not present a short and plain statement of Plaintiff's claims to satisfy Rule 8(a)(2).  As a result, these Motions will be **DENIED** [DE 31; DE 46; DE 47; DE 49].

If Beck wishes to amend her complaint further the Court will order her to file a motion for leave to file a **second amended complaint** on the Court's approved § 1983 form.  The Court **INSTRUCTS** Plaintiff that she must put all of her allegations in a single complaint form, include all Defendants she wishes to sue in this action, and state concisely and directly how she believes each Defendant violated his constitutional rights.  She must state factual allegations but **not** make legal arguments or conclusions.  Any request to file an amended complaint will be subject to a response by Defendants and if granted, it will replace the amended complaint [DE28], become the operative document and the Court will conduct an initial review pursuant to 28 U.S.C. § 1915(e)(2).[5]

In sum, DE 28, the Amended Complaint from the consolidated case, will be the operative pleading in the case and Defendants Metro and Drury shall have 14 days to answer or otherwise file a responsive pleading.

### C. Striking of Filings

As the Court has stated, the premature motions, supplements, and other notices will not be considered by the Court. Because of the quantity of these filings and confusion they have already caused for the Defendant and the Court, the Court will *sua sponte* consider whether such filings should be stricken from the record. [DE 30, DE 32, DE 33, DE 34, DE 36, DE 37, DE 38, DE 39,

---

[5] Because Plaintiff is proceeding in forma pauperis, the Court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915(e)(2); *McGore*, 114 F.3d at 604, *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

DE 40, DE 43, DE 44, DE 45, DE 47, DE 49, DE 51, DE 52, DE 53, DE 54, DE 55, DE 56, DE 65, DE 70, DE 71, DE 72, DE 73, DE 74, DE 76, DE 77, DE 79, DE 83, DE 84, DE 85, DE 87, DE 91, DE 93, DE 94, DE 95, DE 97, DE 98]; Rule 12(f) of the Federal Rules of Civil Procedure governs the striking of pleadings. It provides that the Court may, on its own or on motion by a party, "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may strike portions of the pleading on its own initiative or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)–(2). Rule 12(f) only applies to a "pleading" under Rule 7(a): a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and if the court orders one, a reply to an answer. *Masterson v. Xerox Corp.*, No. 3:13-CV-692-DJH, 2016 WL 4926439, at *5 n. 5 (W.D. Ky. Sept. 14, 2016). Yet it is this Court's practice to address motions to strike filings beyond those listed in Rule 7(a). *Id.* (citing *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at 16–17 (W.D. Ky. Nov. 17, 2011)). Striking "under Rule 12(f) [is] addressed within the sound discretion of the Court, although [it is] generally disfavored." *Hashemian v. Louisville Reg'l Airport Auth.*, No. 3:09-CV-951-R, 2013 WL 1788473, at *5 (W.D. Ky. Apr. 26, 2013) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (internal citations omitted)). Striking should be ordered only where there is a "clear showing that the challenged defense has no bearing on the subject matter and that permitting the matter to stand would prejudice the party." *Id.* (citing *Ameriwood*, 961 F. Supp. at 1083). District courts have ample discretion to strike filings under Rule 12(f), and their decisions are reviewed only for

24

abuse of that discretion. *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 697 (6th Cir. 2017); *Operating Eng'rs Local 324*, 783 F.3d at 1050.

As set forth in detail above, the documents filed by Plaintiff are improper, relate to other cases filed by Plaintiff which are not the subject of this litigation, they are filed without leave, and create an unwieldy and confusing docket. Permitting them to stand in the record would prejudice the Defendants, as well as the Court, by creating confusion and congesting the record with irrelevant and improperly filed documents. *See, e.g., Sutton v. Penny Mac Loan Servs., LLC,* No. 2:23-CV-00064, 2025 WL 342197, at *7 (M.D. Tenn. Jan. 27, 2025), *report and recommendation adopted,* No. 2:23-CV-00064, 2025 WL 611061 (M.D. Tenn. Feb. 25, 2025), *reconsideration denied*, No. 2:23-CV-00064, 2025 WL 1903660 (M.D. Tenn. July 9, 2025), and *motion for relief from judgment denied*, No. 2:23-CV-00064, 2026 WL 237549 (M.D. Tenn. Jan. 28, 2026) (striking multiple amended pleadings under Rule 12(f) as they were "improperly filed under Rule 15(a)" without leave of court"); *Love v. Mich. Prop. Res.*, 737 F. Supp. 3d 600, 604, 608 (E.D. Mich. 2024) (striking plaintiffs' re-filed second amended complaint under Rule 12(f) where "Plaintiffs did not request leave to refile the second amended complaint"); *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2013 WL 5937040, at *1 (S.D. Ohio Nov. 4, 2013) ("Amended pleadings filed without the party first seeking and obtaining leave as required by Federal Rule of Civil Procedure 15(a) may be stricken pursuant to Rule 12(f)."). As a result, the Court **STRIKES** these filings. [DE 30, DE 32, DE 33, DE 34, DE 36, DE 37, DE 38, DE 39, DE 40, DE 43, DE 44, DE 45, DE 47, DE 49, DE 51, DE 52, DE 53, DE 54, DE 55, DE 56, DE 65, DE 70, DE 71, DE 72, DE 73, DE 74, DE 76, DE 77, DE 79, DE 83, DE 84, DE 85, DE 87, DE 91, DE 93, DE 94, DE 95, DE 97, DE 98].

Furthermore, a review of Beck's civil litigation history reveals that she has repeatedly filed duplicative lawsuits, motions, and appeals — "conduct that serves no legitimate purpose and places a significant burden on this Court's limited resources while depriving other litigants with plausible claims of the speedy resolution of their cases." *See Fishback v. Warren Cnty. Fiscal Ct.*, No. 3:24-CV-00027-GFVT, 2024 WL 1557327, at *4 (E.D. Ky. Apr. 10, 2024). Beck is **WARNED** to cease filing duplicative and frivolous filings and daily "supplementation" or "notices." Filing frivolous motions, supplements and notices, like the ones stricken here, strains the Court's resources and prevents the Court from moving the case towards resolution or proceeding to discovery and prevents the Court from reviewing any other important motions filed in the case. Beck is further **INSTRUCTED** not to file any other motions or filings until the Defendants have their opportunity to answer or otherwise plead, which shall expire fourteen days from the date of this order. Moreover, Beck is **WARNED** to take note of filings requiring leave of Court and file for leave where necessary.

### D. Unauthorized Practice of Law

As noted above, several of the pleadings and filings state either that the pleading is made by and through her Pro Se Legal Assistant, Anthony Lovell Smith (PSLA)," [DE 13 at 53], or is signed by Mr. Smith. *See e.g.,* [DE 14 at 68 (This document is signed by Beck as well as "Anthony Lovell Smith, Pro Se Legal Assistant Re-Entry Bridges, Inc."). A word of caution to Beck, Mr. Smith may not act or sign documents on behalf of Plaintiff as such conduct constitutes the unauthorized practice of law. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be represented by

an attorney, but cannot be represented by a nonlawyer."); *Cooper v. Vinson*, No. 5:17CV-P10-TBR, 2017 WL 3452360, at *2 (W.D. Ky. Aug. 10, 2017); *Word v. Boyd*, No. CIV.A. 5:07CV-181-R, 2007 WL 4180602, at *1 (W.D. Ky. Nov. 21, 2007).  Unfortunately, this is not new information to Beck.  She has been warned of vexatious litigant issues in her previous cases.  3:25-cv-00691-JHM*, Beck v. McKinley*, [DE 6], 3:25-cv-00698-JHM, *Beck v. Edwards*, [DE 7], and 3:25-cv-00701-JHM, *Beck v. McKinley*, [DE 7].  Continuation of this behavior may potentially subject Beck to sanctions and other consequences.  Beck is **WARNED** not to continue to permit the unauthorized practice of law in this case.

### CONCLUSION

For the reasons above, **IT IS ORDERED** as follows:

1. All motions for default, collection on default, or to compel the clerk to grant default under Rule 55(a) are **DENIED** [DE 41; DE 42; DE 57; DE 58; DE 59; DE 60; DE 61; DE 62; DE 63; DE 64; DE 68; DE 69; DE 78; DE 86; DE 88; DE 92; DE 96; DE 99];

2. Metro's Motion for leave to seal [DE 80] is **GRANTED;**

3. The Motion for Leave to File Amended Complaint [DE 28] as to Defendants Metro and Drury is **GRANTED IN PART** and DE 28 will become the **OPERATIVE PLEADING** for these defendants to answer or otherwise plead;

4. The Motion for Leave to File Amended Complaint [DE 28] is **DENIED in PART** as to Officers Hess and Calvelo;

5. All other motions to amend the Complaint [DE 31; DE 35, DE 46; DE 47; DE 49] are **DENIED**;

6. [DE 28], the Amended Complaint from the consolidated case, will be the operative pleading in the case;

7. Defendants Metro and Drury shall have **14 days from the entry of this order** to answer or otherwise file a responsive pleading to [DE 28] Amended Complaint;

8. The Clerk of Court shall **STRIKE** the following documents from the record, but maintain electronic copies of the documents in the Clerk's Office files in the event of an appeal: [DE 30, DE 32, DE 33, DE 34, DE 36, DE 37, DE 38, DE 39, DE 40, DE 43, DE 44, DE 45, DE 47, DE 49, DE 51, DE 52, DE 53, DE 54, DE 55, DE 56, DE 65, DE 70, DE 71, DE 72, DE 73, DE 74, DE 76, DE 77, DE 79, DE 83, DE 84, DE 85, DE 87, DE 91, DE 93, DE 94, DE 95, DE 97, DE 98];

9. Beck is **WARNED** to cease filing duplicative and frivolous filings and daily "supplementation" or "notices;"

10. Beck is **INSTRUCTED** not to file any other motions or filings until the Defendants have their opportunity to answer or otherwise plead, which shall expire fourteen days from the date of this order; and

11. Beck is **WARNED** not to continue to permit the unauthorized practice of law in this case or she may face sanctions.

Rebecca Grady Jennings, District Judge
United States District Court

May 1, 2026

CC:    Plaintiff, pro se

28